1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MACK A. WEST,                            No.  2:12-cv-1293 MCE DAD P

12              Plaintiff,

13        v.                                  ORDER AND

14   NOEL DIZON,                              FINDINGS & RECOMMENDATIONS

15              Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se with an action for alleged violations of his

18   civil rights, pursuant to 42 U.S.C. § 1983.  In his complaint plaintiff alleges that defendant Dizon

19   retaliated against him for exercising his rights under the First Amendment.  The defendant has

20   filed a motion for summary judgment.  Plaintiff has filed several miscellaneous motions but has

21   not filed an opposition to the pending motion for summary judgment.

22        I.   Standards Governing Summary Judgment

23        Summary judgment is appropriate when the moving party "shows that there is no genuine

24   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

25   Civ. P. 56(a).

26        Under summary judgment practice, the moving party "initially bears the burden of

27   proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation,

28   627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

1

1    The moving party may accomplish this by "citing to particular parts of materials in the record,

2    including depositions, documents, electronically store information, affidavits or declarations,

3    stipulations (including those made for purposes of the motion only), admission, interrogatory

4    answers, or other materials" or by showing that such materials "do not establish the absence or

5    presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

6    support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden

7    of proof at trial, "the moving party need only prove that there is an absence of evidence to support

8    the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.).

9    See also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after

10   adequate time for discovery and upon motion, against a party who fails to make a showing

11   sufficient to establish the existence of an element essential to that party's case, and on which that

12   party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure

13   of proof concerning an essential element of the nonmoving party's case necessarily renders all

14   other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so

15   long as whatever is before the district court demonstrates that the standard for entry of summary

16   judgment, . . ., is satisfied." Id. at 323.

17       If the moving party meets its initial responsibility, the burden then shifts to the opposing

18   party to establish that a genuine issue as to any material fact actually does exist. See Matsushita

19   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the

20   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

21   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

22   admissible discovery material, in support of its contention that the dispute exists. See Fed. R.

23   Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the

24   fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

25   governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

26   Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

27   genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

28   party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party."  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

II.   The Undisputed Facts

At all times relevant to the plaintiff's claim, he was incarcerated at the California Medical Facility (CMF) in Vacaville where defendant Dizon was employed as a correctional officer.  During the events in question, plaintiff was assigned to a wheelchair.

On May 10, 2009, plaintiff had a priority ducat, or pass, to attend a mental health class away from his dorm.  (Defendant's Statement of Undisputed Facts (DUF, Doc. No. 33-2) 6; Complaint (Doc. No. 1) at 4.)  Plaintiff asked the defendant Dizon, who was working in plaintiff's dorm, to allow him through the gate so that plaintiff he could get to the class.  (DUF 8; Compl. at 4.)  Defendant Dizon responded by asking if plaintiff was giving him "an order."  (DUF 9; Compl. at 4.)  Plaintiff told defendant "not to play with him."  (DUF 10; Compl. at 5.)  Defendant Dizon then asked if plaintiff was threatening him.  (DUF 11; Compl. at 5.)  Plaintiff replied "No" and told defendant Dizon that he would file a 602 inmate appeal, the grievance form

3

1  ordinarily used by prisoners to complain about misconduct or mistreatment by prison staff.  (DUF

2  12; Compl. at 5.)  Defendant Dizon then grabbed a stack of 602 inmate appeal forms, threw them

3  on the ground and kicked them toward plaintiff under the gate.  (DUF 13-14.)

4      At that point plaintiff called to another correctional officer, Captain Flores, who was

5  nearby.  (Compl. at 5; Plaintiff's Deposition (Doc. No. 33-4) at 13.)  Plaintiff told Captain Flores

6  that "the officer here is messing with me," to which Flores responded with an ambiguous hand

7  gesture and said, "Take it up with your floor officer," who happened to be defendant Dizon.  (Pl's

8  Depo. at 13-14; Compl. at 5.)  Defendant Dizon then let plaintiff pass through the gate and

9  plaintiff arrived at his therapy group after the class had already begun.   (DUF 15.)

10     On May 15, 2009, plaintiff had received another ducat that allowed him to leave his dorm.

11  Before he left, defendant Dizon said to plaintiff, "Don't get mad when you come back from your

12  ducat."  (DUF 16; Compl. at 9; Pl's Depo. at 16.)  When plaintiff returned, defendant Dizon

13  handed him a property receipt and said, "Read it and weep."  (DUF 17; Compl. at 9.)[1]  The

14  receipt showed that defendant Dizon had searched plaintiff's bed area while plaintiff was away

15  and confiscated a color television set.  (DUF 19; Dizon Declaration (Doc. No.33-5) ¶ 4; Compl. at

16  5-6.)  Defendant Dizon states that prior to his confiscation of the television, he was

17  
18  
19  
> doing a walk-through . . . for a cursory search of the dorm, which is
> the normal procedure.  At that time, I noted that Plaintiff appeared
> to have more than the allowable amount of property in his assigned
> area in the dorm . . . .  I checked the color television set, and it did
> not appear to belong to plaintiff.

20  (Dizon Decl. ¶ 5.)  Defendant Dizon also stated in his declaration that he had spoken with another

21  correctional officer, Officer Brooks, "who confirmed it was not plaintiff's set and that she had

22  warned Plaintiff that it might be confiscated . . . .  I was required to, and did, confiscate the

23  television as inmates are not allowed to possess property that is not theirs."  (Id.)  Defendant

24  Dizon also declared that he "did not search Plaintiff's dorm area nor did I confiscate the

25  television from Plaintiff to retaliate against him for any reason[.]"  (Id at ¶ 6.)

26  

27  [1] Defendant's undisputed fact number 17 references page 44 of the plaintiff's deposition.
    However, that page of the transcript is not included in the excerpts of the deposition submitted in
28  support of defendant's motion for summary judgment.  (See Doc. No. 33-4.)

When plaintiff received the property receipt reflecting the confiscation of the television, he called out to speak with Sergeant Appleberry, who was nearby.  (DUF 30; Pl's Depo. at 22.)  When plaintiff did so, defendant Dizon grabbed the back of plaintiff's wheelchair and briefly prevented plaintiff from moving toward Sgt. Appleberry.  (Id.) This restraint lasted less than fifteen seconds.  (DUF 30; Pl's Depo. at 22-23.)  Plaintiff then wheeled himself to Sergeant Appleberry to "repor[t] about how . . . Dizon continues to harass and retaliate against him, by conducting retaliatory searches and taking his color television set."  (Compl. at 6; DUF 30; Pl's Depo. at 25.)

On May 18, 2009, plaintiff was reassigned from Unit IV to Unit I at CMF.  (DUF 33; Compl. at 6.)  That same day, after his reassignment, plaintiff went back to Unit IV to ask Officer Brooks "for her assistance in obtaining the color television set she traded with plaintiff for his black and white television set."[2]  (Compl. at 6.)  Officer Brooks informed plaintiff that he could no longer come to Unit IV because of his recent reassignment to Unit I.  (DUF 33; Pl's Depo. at 19; Compl. at 7.)  Plaintiff started to return to Unit I when defendant Dizon stopped him and asked if he had a ducat to be in Unit IV.  (DUF 34; Dizon Decl. ¶ 8.)  When plaintiff replied "No," defendant Dizon issued him a Rules Violation Report (RVR) for being out of bounds.  (DUF 34, 37; Dizon Decl. ¶ 9.)  Plaintiff alleges in his complaint that when "Dizon told plaintiff that he was getting a [RVR] for being out of bounds, [Dizon] told plaintiff this will teach you [a] lesson about telling on him (defendant)."  (Compl. at 7.)  Defendant Dizon denies in his declaration that he retaliated against plaintiff by issuing the RVR in question.  (Dizon Decl. ¶ 9.)

Plaintiff did not file a 602 inmate appeal against defendant correctional officer Dizon until May 19, 2009, four days after the search and confiscation of the television set and one day after defendant Dizon issued plaintiff the RVR for being out of bounds.  (Doc. 33-4 at 4; Pl's Depo. at 30-31.)

/////

/////

---

[2] Defendant Dizon does not contest that plaintiff had obtained the color television set through a trade with Officer Brooks.

1        III.   Analysis

2            The last court-established deadline for plaintiff to file his opposition to the pending

3    motion for summary judgment was February 21, 2014.  The court set that deadline after granting

4    plaintiff several extensions of time and with the clear admonition that no further extensions would

5    be granted for that purpose without a showing of extraordinary circumstances by plaintiff.  (See

6    Doc. No. 69.)  Plaintiff has moved for yet another extension of time to file his opposition to that

7    motion, but he has not made a showing of extraordinary circumstances.  (See Doc. No. 79.)

8            Plaintiff's failure to file an opposition does not, however, necessarily render defendant's

9    motion for summary judgment wholly unopposed.  A complaint that is submitted in substantial

10   compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve

11   as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge

12   and contain specific facts admissible into evidence.  See Jones v. Blanas, 393 F.3d 918, 923 (9th

13   Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified

14   complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by

15   citing two specific instances where correctional staff members . . . made statements from which a

16   jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197–98 (9th

17   Cir.1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (reversing the district

18   court's grant of summary judgment because it "fail[ed] to account for the fact that El Bey signed

19   his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746.  His verified complaint

20   therefore carries the same weight as would an affidavit for the purposes of summary judgment").

21   Here, plaintiff has submitted his complaint with a declaration under penalty of perjury that its

22   allegations are true and correct.  (Compl. at 4.)  It therefore qualifies as a verified complaint under

23   28 U.S.C. § 1746 and, to the extent it alleges specific facts from plaintiff's personal knowledge, it

24   carries the same weight as an affidavit proffered to oppose summary judgment.  See Keenan v.

25   Hall, 83 F.3d 1083, 1090 n. 1 (9th Cir. 1996).

26       A.   Plaintiff's Retaliation Claim

27            Plaintiff alleges that defendant Dizon engaged in a "campaign of harassment" after their

28   verbal altercation on May 10, 2009, during which plaintiff "told defendant N. Dizon that plaintiff

6

1   would file a 602 on defendant for playing with plaintiff." (Compl. at 8.)  Plaintiff alleges that

2   virtually every act defendant Dizon took after that with respect to plaintiff was an act of

3   retaliation in response to plaintiff's threat to file an inmate appeal against Dizon.  (Id. at 8-9.)

4             1.  Whether there is a genuine issue of material fact

5        Retaliation by a state actor for the exercise of a constitutional right is actionable under §

6   1983 even if the act would have been proper or justified under different circumstances.  See Mt.

7   Healthy City Bd. of Education v. Doyle, 429 U.S. 274, 283-84 (1977).  In the prison context, a

8   plaintiff alleging unconstitutional retaliation must show:  (1) that a state actor took some adverse

9   action against him (2) because of (3) the prisoner's protected conduct, and that such action (4)

10   chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

11   advance a legitimate correctional goal.  Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009);

12   Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir.2005).  It is well established that "[p]risoners

13   have a First Amendment right to file grievances against prison officials and to be free from

14   retaliation for doing so."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012).  See also

15   Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir.2005); Bruce v. Ylst, 351 F.3d 1283, 1288 (9th

16   Cir.2003); Schroeder, 55 F.3d at 461.

17        Defendant Dizon argues first that because plaintiff did not file a 602 inmate appeal against

18   Dizon until May 19, 2009, "there had been no protected activity prior to Dizon confiscating the

19   color television set and giving plaintiff a rules violation for being out of bounds."  (Mem. in

20   Supp. of Mot. for Summ. J. (MSJ) at 6.)  This argument is without merit.  The First Amendment's

21   protection in this context is not limited to the formal submission of a complaint against a prison

22   staffer.  It also extends to less formal situations:

23             An inmate's reporting of officer misconduct, or the attempt to do so
              verbally or in writing, constitutes speech or conduct entitled to First
24            Amendment protection.  In the retaliation context, there is no "legal
              distinction between the filing of a charge which is clearly protected
25            and threatening to file a charge."  The "conduct" which is protected
              in both the pursuit of litigation and the grievance procedures is the
26            First Amendment right to petition for redress.

27   Uribe v. McKesson, Civil No. 08CV01285 DMS (NLS), 2011 WL 9640 at *12  (E.D. Cal. June

28   3, 2011) (quoting Gifford v. Atchison, Topeka, & Santa Fe Ry. Co., 685 F.2d 1149, 1155-56 n. 3

1    (9th Cir.1982)).  See also Ansel v. Hicks, No. 1:11-cv-114-RJC, 2012 WL 4511187, at *9-10

2    (W.D.N.C. Sept. 30, 2012) (plaintiff's questioning of prison staff's right to strip search inmates

3    and accusations that prison staff were misusing food and embezzling state property found to be

4    "essentially grievances" and therefore were protected activity which could serve as the basis for a

5    retaliation claim even though the prisoner plaintiff had not filed a formal inmate grievance);

6    Conkleton v. Muro, Civil Action No. 08-cv-2612-WYD-MEH, 2011 WL 1119869, at *3 (D.

7    Colo. Mar. 28, 2011) (Agreeing that the "verbal articulation" of "an intent to file [an inmate]

8    grievance" is constitutionally protected speech and denying defendant's motion for summary

9    judgment on plaintiff's retaliation claim); Carter v. Dolce, 647 F. Supp. 2d 826, 834 (E.D. Mich.

10   2009) ("Once a prisoner makes clear his intention to resort to official channels to seek a remedy

11   for ill treatment by a prison employee, retaliation against the prisoner by that employee implicates

12   all the policies intended to protect the exercise of a constitutional right.") .

13        Here, it is undisputed that during his verbal altercation with defendant Dizon on May 10,

14   2009, plaintiff told the defendant he was going to file a 602 inmate grievance against him.  (See

15   DUF 12; Compl. at 5.)  It is also not disputed that defendant Dizon heard plaintiff's threat to file a

16   grievance naming him, as Dizon immediately reacted by throwing a stack of 602 inmate appeal

17   forms on the floor in front of plaintiff and kicked them under the gate.  (See DUF 13-14.)  In his

18   complaint plaintiff clearly alleges that the "campaign of retaliation towards plaintiff was . . . after

19   plaintiff told defendant . . . that plaintiff would file a 602 on defendant[.]" (Compl. at 8)

20   (emphasis added).  Plaintiff has thus alleged he engaged in protected conduct  –  telling defendant

21   Dizon that he was going to file a 602 against him  –  before the cell search and the issuance of the

22   RVR.  The timing of plaintiff's actually filing the 602 inmate grievance complaining of defendant

23   Dizon's conduct therefore cannot serve as the basis for the granting of summary judgment as

24   defendant seeks here.

25        Defendant Dizon next contends that the television set he confiscated from plaintiff on

26   May 15, 2009 did not belong to plaintiff, so its confiscation served the legitimate penological

27   purpose of enforcing the prison's rule against inmates possessing property that is not their own.

28   The court is mindful of the deference owed to prison policies that are designed to maintain prison

8

1   order and security; it is beyond dispute that routine cell searches and rules controlling what

2   objects inmates may possess are valid and necessary for that purpose.  See Hudson v. Palmer, 468

3   U.S. 517, 529 (1984).  Nevertheless, it is also well established that a facially legitimate security

4   measure, such as a cell search or a confiscation of property, may be actionable under the Civil

5   Rights Act if it is carried out for an improper motive, such as retaliation for engaging in

6   constitutionally protected conduct.  See Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1995).  The

7   burden is on the plaintiff to plead and prove the absence of any legitimate penological purpose in

8   the act that he alleges was retaliatory.  See Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir.1995);

9   Bruce, 351 F.3d at 1288; Uribe, 2011 WL 9640 at *18.  The Supreme Court has approved of

10  requiring a plaintiff who alleges retaliation to show that his exercise of constitutionally protected

11  conduct was a "substantial factor" or "motivating factor" behind the state actor's adverse action

12  when that action appears on the surface to be legally justified.  Mt. Healthy City Bd. of Educ.,

13  429 U.S. at 287.

14          Defendant Dizon's argument on summary judgment that he engaged in a legitimate

15  penological activity on May 15, 2009, focuses exclusively on his reason for confiscating the

16  television set: he says he confiscated it because it did not belong to plaintiff.  Plaintiff maintains

17  he had traded with Officer Brooks for the television and that it was in fact his.  (Compl. at 6.)

18  However, the confiscation of the television is not the only conduct material to plaintiff's claim

19  that defendant Dizon retaliated against him on May 15, 2009.  Defendant's argument ignores the

20  relevance of the search itself.  Regardless of the outcome (i.e., confiscation or destruction of an

21  inmate's property), a prison search can constitute an "adverse action" necessary to support a

22  claim of retaliation.  "Mt. Healthy and its progeny do not properly immunize defendants who

23  abuse state authority by engaging in a retaliatory act, yet who, in the course of that act, happen to

24  discover evidence incriminating the plaintiff."  Wilson v. City of Fountain Valley, 372 F. Supp.

25  2d 1178, 1190 (C.D. Cal. 2004).

26          A plaintiff may support a claim of retaliation with evidence of the defendant's knowledge

27  of the protected activity, the defendant's conduct and statements, and the timing of the allegedly

28  retaliatory act.  See Pratt, 65 F.3d at 807 ("timing can properly be considered as circumstantial

9

1    evidence of retaliatory intent."); <u>Bruce</u>, 351 F.3d at 1289 (statements and suspect timing raised

2    triable issue of fact regarding whether the defendants' motive behind plaintiff's gang validation

3    was retaliatory); <u>see also</u> <u>Schwartzman v. Valenzuela</u>, 846 F.2d 1209, 1212 (9th Cir.1988).  In

4    moving for summary judgment in his favor, defendant Dizon has ignored the search itself as an

5    independent basis of plaintiff's retaliation claim.  Here, plaintiff's verified complaint's effectively

6    undisputed allegations are sufficient to raise a triable issue of fact.  Defendant Dizon does not

7    dispute – in fact he lists it as an undisputed fact – that on May 15, 2009, five days after the verbal

8    altercation in which plaintiff threatened to file a 602 inmate appeal against defendant and

9    complained to Captain Flores about him, he told plaintiff "don't get mad when you get back from

10   your ducat."  (DUF 16.)  Nor does defendant Dizon dispute that shortly after that, while plaintiff

11   was on his ducat, the defendant searched plaintiff's bed area, confiscated the television set and

12   told plaintiff, upon plaintiff's return, "read it and weep" as he handed plaintiff the search and

13   property receipt that documented the confiscation.  (DUF 17.)  These two statements, if believed,

14   support an inference of retaliatory motive on the part of defendant Dizon.  Moreover, the timing

15   of his search immediately after defendant Dizon told plaintiff "don't get mad when you get back

16   from your ducat" supports the same inference.  "[T]iming can properly be considered as

17   circumstantial evidence of retaliatory intent."  <u>Pratt</u>, 65 F.3d at 808.  <u>See also</u> <u>Bruce</u>, 351 F.3d at

18   1288-89; <u>Soranno's Gasco, Inc. v. Morgan</u>, 874 F.2d 1310, 1315-16 (9th Cir.1989); <u>Davis v.</u>

19   <u>Runnels</u>, No. 2:05-cv-1898-JAM-EFB P, 2013 WL 3934378, at *6, (E.D. Cal. July 29, 2013)

20   ("[T]he timing of the alleged threats (during the interview regarding plaintiff's appeal) supports

21   the inference of a retaliatory purpose.")[3]

22         All of these details are, for purposes of summary judgment, undisputed and they are all

23   material.  Together these undisputed facts could lead a reasonable juror to conclude that

24   plaintiff's verbal complaint to Captain Flores and his threat to file a 602 inmate appeal against

25   ───────────────

     [3]  To be sure, a retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc,

26   literally, "after this, therefore because of this."  Huskey v. City of San Jose, 204 F.3d 893, 899
     (9th Cir. 2000).  The plaintiff must show causation or that the defendant was substantially

27   motivated by or because of plaintiff's protected conduct.  In this case, plaintiff has offered
     evidence of causation in the form of the defendant's knowledge, the defendant's statements and

28   the suspect timing of defendant's actions.

1   defendant Dizon were "substantial factors" or "motivating factors" in Dizon's search of plaintiff's

2   bed area and his confiscation of the television set.  See Brodheim, 584 F.3d at 1266, 1271

3   (summary judgment on retaliation claim denied where there was evidence that the defendant had

4   warned the plaintiff prisoner "be careful what you write"); Valandingham v. Bojorquez, 866 F.2d

5   1135, 1137-38 (9th Cir. 1989) (concluding that plaintiff's showing of the existence of a genuine

6   issue of material fact as to his retaliation claim precluded the granting of summary judgment in

7   favor of the defendant).

8        Defendant Dizon argues that he when he searched plaintiff's bed area and confiscated the

9   television set, he "was doing a walk-through of the dorm for a cursory search, which is the normal

10  procedure." (DUF 20.)  In light of the allegations defendant Dizon has left unrefuted, though,

11  arguing he was only carrying out "normal procedure" is not enough to entitle him to entry of

12  summary judgment in his favor.  "[P]rison officials may not defeat a retaliation claim on

13  summary judgment simply by articulating a general justification for a neutral process, when there

14  is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise

15  of a constitutional right."  Bruce, 351 F.3d at 1289.

16       As for the issuance of the RVR on May 19, 2009, there is no dispute that plaintiff was

17  violating a prison rule for being out of bounds without a ducat or other authorization that day.

18  (DUF 35; Pl's Depo. at 19-21, 29.)  However, in his verified complaint plaintiff alleges that when

19  defendant Dizon wrote the RVR, he told plaintiff that "this will teach you a lesson about telling

20  on him[.]"  (Compl. at 7.)  Plaintiff reiterated this allegation at his deposition and further

21  explained that defendant Dizon was referring to plaintiff's verbal reports about Dizon to Captain

22  Flores on May 10, 2009, and to Sergeant Appleberry on May 15, 2009.  (Pl.'s Depo. at 21.)  This

23  specific allegation of the complaint is, in light of all of the allegations and undisputed facts before

24  the court on summary judgment, "part of a chronology of events from which retaliation may be

25  inferred."  Cain v. Lane, 857 F.2d 1139, 1143 n. 6 (7th Cir.1988).  In fact, it is an allegation that

26  standing alone supports an inference of retaliatory intent on the part of defendant Dizon.  As with

27  the allegedly retaliatory search and confiscation of property, the fact that plaintiff did not file a

28  602 inmate appeal until after he was issued this RVR does not alter the undisputed fact that

11

1  defendant Dizon knew of plaintiff's previous verbal complaints, all of which were protected

2  conduct under the First Amendment.

3        The court recognizes that in his sworn declaration defendant Dizon denies any retaliatory

4  motive in any of the acts he engaged in forming the basis of plaintiff's retaliation claim against

5  him.  However, the defendant's sworn statement is no more detailed than plaintiff's verified

6  complaint and arguably less so.  Not only does the defendant Dizon not refute making the key

7  statements from which retaliatory intent could be inferred, he includes two of them – "Don't get

8  mad when you get back from your ducat" and "read it and weep" – in his own statement of

9  undisputed facts on summary judgment.  On the dispositive issue of whether his motive was to

10  retaliate against plaintiff, defendant Dizon offers no evidence in support of his motion other than

11  his own sworn statement that he took his actions in accordance with the usual prison procedures

12  but did not have the intent to retaliate against plaintiff.

13        Of course, "[a] conclusory, self-serving affidavit, lacking detailed facts and any

14  supporting evidence, is insufficient to create a genuine issue of material fact."  FTC v. Publishing

15  Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997).  See also Ah Quin v. County of Kauai

16  Dept. of Transp., 733 F.3d 267, 289 (9th Cir. 2013).  The same rule applies to the defendant's

17  initial burden as the movant seeking summary judgment in his favor:  "conclusory, general

18  statements with no supporting citations to the evidence do not meet the initial burden on summary

19  judgment."  Allen v. City of Santa Monica, No. CV 11-10139-R (SH), 2013 WL 6731789 at *14,

20  (C.D. Cal. Dec. 18, 2013).[4]  Here, defendant Dizon points to nothing before the court on summary

21  judgment refuting that he made the statements that plaintiff alleges in his verified complaint and

22  reiterated in deposition.  Having submitted them as undisputed facts for purposes of summary

23  _____

24  [4]  In Allen, the plaintiff alleged that the defendant police officers and jailers had used excessive
    force during his arrest.  The defendants' cross-motion for summary judgment rested solely on
    their assertion that "the facts here fully justified the minimal use of force by the officers and
25  jailers."  Allen, 2013 WL 6731789 at *14.  In this case, defendant Dizon's assertion that he did
    not retaliate against plaintiff but was merely following standard prison procedure is no more
26  specific than the bald denials of liability rejected in Allen.  See also Galindo v. Precision Am.
    Corp., 754 F.2d 1212, 1216 (5th Cir.1985) (recognizing that affidavits that allege "ultimate or
27  conclusory facts and conclusions of law" standing alone are insufficient to support a grant or
    denial of summary judgment).

28

1    judgment, defendant Dizon cannot contraindicate the reasonable inferences those undisputed

2    statements made might support with a conclusory statement that he nonetheless did not mean to

3    retaliate.

4            Taken as a whole and viewed in the light most favorable to the plaintiff, the record puts

5    defendant Dizon's motives genuinely at issue.  The material allegations of plaintiff's verified

6    complaint versus defendant Dizon's bald denial that he had any retaliatory motive in carrying out

7    the search of plaintiff's bed area, the confiscation of the television or the issuing of the RVR

8    present a classic credibility contest that a motion for summary judgment cannot resolve.  Ford v.

9    City of Yakima, 706 F.3d 1188, 1194-95 (9th Cir. 2013) (reversing grant of summary judgment

10   in favor of defendants with respect to plaintiff's First Amendment retaliation claim in part because

11   the plaintiff had come forward with sufficient evidence from which a jury could find that the

12   police officer acted with a retaliatory motive); Earl v. Nielsen Media Research, Inc., 658 F.3d

13   1108, 1112 (9th Cir. 2011) ("Summary judgment should be used prudently in ... cases involving

14   motivation and intent.") (quoting Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir.

15   2000)); Davis v. City of Las Vegas, 478 F.3d 1048, 1060 (9th Cir. 2007) ("Whether Officer

16   Miller's actions were in bad faith is a determination that may not be made at summary judgment,

17   at least not where, as here, there are contested issues of material fact with respect to Officer

18   Miller's conduct and his motivation.")

19            Therefore, defendant Dizon's motion for summary judgment should be denied.

20                        2.  Qualified immunity

21            Defendant Dizon also asserts that as a state actor he has qualified immunity from liability

22   in this case.  Government officials performing discretionary functions generally are shielded from

23   liability for civil damages insofar as their conduct does not violate clearly established statutory or

24   constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457

25   U.S. 800, 818 (1982).  In determining whether a governmental officer is immune from suit based

26   on the doctrine of qualified immunity, the court considers two questions.  One asks whether the

27   facts alleged, viewed in the light most favorable to the party asserting the injury, show the

28   officer's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  A

1  negative answer ends the analysis, with qualified immunity protecting defendant from liability.

2  Id.  If a constitutional violation occurred, a court also asks "whether the right was clearly

3  established."  Id.  "If the law did not put the [defendant] on notice that [his] conduct would be

4  clearly unlawful, summary judgment based on qualified immunity is appropriate."  Id. at 202.

5  The inquiry into whether a right was clearly established "must be taken in light of the specific

6  context of the case, not as a broad general proposition."  Id. at 201.  "[T]he right the official is

7  alleged to have violated must have been 'clearly established' in a more particularized, and hence

8  more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable

9  official would understand that what he is doing violates that right."  Anderson v. Creighton, 483

10  U.S. 635, 640 (1987).[5]

11          The Ninth Circuit has long stated its "firm recognition that 'the prohibition against

12  retaliatory punishment is 'clearly established law' . . . for qualified immunity purposes."  Rhodes,

13  408 F.3d at 570 (citing Pratt, 65 F.3d at 806).  See also Schroeder, 55 F.3d at 461.  The facts

14  alleged in this case, if proved, would establish a constitutional violation occurred.  Furthermore,

15  the cases establishing the right to be free from retaliation well preceded the events that gave rise

16  to this lawsuit.  Id.  The defendant cannot plausibly argue that he was not on notice that the

17  improper retaliatory motives alleged here rendered his conduct an unconstitutional exercise of his

18  authority.  Therefore, defendant Dizon is not entitled to summary judgment in his favor on

19  qualified immunity grounds.

20          B.  Excessive Use of Force

21          In his motion for summary judgment defendant Dizon addresses a purported claim for use

22  of excessive force in violation of the Eighth Amendment.  However, in the complaint before the

23  court plaintiff does not aver such a claim, nor did plaintiff intend to include such a claim in his

24  original complaint.  In this regard, plaintiff sought leave to amend his complaint to add a claim of

25

26  [5]  The district court may decide the order of addressing the two prongs of its qualified immunity
    analysis in accordance with fairness and efficiency and in light of the circumstances of a
27  particular case.  See Pearson v. Callahan, 555 U.S. 223, 236 (2009).  Given the particular
    circumstances of this case, this court sees no reason to depart from the traditional order of
28  analysis presented in Saucier.

1    excessive force more than a year-and-a-half after he filed his original (and operative) complaint.

2    (See Doc. No. 57.)  The court denied plaintiff's motion to amend on the basis that the proposed

3    allegation "contains no substantive support for a claim of excessive force at all."  (See Doc. No.

4    63 at 4.)

5            Plaintiff's motion to amend and its denial came well after defendant filed the instant

6    motion for summary judgment and the court surmises that defendant included the argument

7    against a claim for excessive force out of an abundance of caution.  In any event, the court

8    reiterates that plaintiff's complaint does not contain any claim that he was subjected to the

9    excessive use of force in violation of his rights under the Eighth Amendment.  Therefore,

10   defendant Dizon's motion for summary judgment on such a claim should be denied as moot.

11           IV.   Plaintiff's Various Motions

12           Plaintiff has filed three motions for three extensions of time to address three different

13   issues – or if these findings and recommendations are adopted, non-issues.  Plaintiff has also filed

14   motions requesting that the court amend a previous order and reconsider another.

15           First, plaintiff seeks additional time in which to oppose defendant's motion for leave to

16   file an amended answer.  Defendant sought leave to amend his answer in order to preserve

17   affirmative defenses that were, according to his counsel, inadvertently omitted from the original

18   answer filed in this action.  On February 20, 2014, the court granted the motion for good cause.

19   (Doc. No. 76.)  Plaintiff moves for reconsideration of that order.

20           Insofar as the court has found that the only affirmative defense heretofore argued,

21   qualified immunity, is without merit, plaintiff has suffered no prejudice from the order granting

22   defendant leave to amend his answer.  See Section III.A.2, supra.  Plaintiff's motion for

23   additional time in which to oppose defendant's motion to file an amended answer is therefore

24   moot and will be denied as such.  Plaintiff's motion to reconsider the order granting the motion to

25   file an amended answer will also be denied.

26           Plaintiff also seeks yet more additional time in which to file an opposition to the

27   defendant's motion for summary judgment.  In light of the undersigned's recommendation that

28   /////

15

1   the motion for summary judgment be denied, plaintiff's motion for additional time to file an

2   opposition to the motion for summary judgment will be denied at this time without prejudice.

3         Plaintiff's motion for additional time in which to file a motion for sanctions will also be

4   denied as moot.  While there is no definite time limit for the filing of a motion for sanctions, the

5   Advisory Committee's Note to Rule 11 states that a motion for sanctions "should be served

6   promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as

7   untimely."[6] Thus no extension of time is necessary.

8         Finally, the court will address the mis-labeled "motion to amend the judgment" filed by

9   plaintiff on February 6, 2014, in a separate order.

10        V.   <u>Conclusion</u>

11        In accordance with the above, IT IS HEREBY ORDERED that:

12        1.   Each of plaintiff's motions seeking additional time to file documents with the court

13  (Doc. Nos. 77, 78 and 79) are denied as having been rendered moot.

14        2.   Plaintiff's motion for reconsideration (Doc. No. 80) of the order granting defendant

15  leave to file an amended answer is denied.

16        IT IS HEREBY RECOMMENDED that defendant Dizon's motion for summary judgment

17  filed June 7, 2013 (Doc. No. 33) be denied.

18        These findings and recommendations are submitted to the United States District Judge

19  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

20  after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties.  Such a document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

23  objections shall be served and filed within fourteen days after service of the objections.  The

24  /////

25

26  [6]  The 21-day time limit of Federal Rule of Civil Procedure 11(c)(2), to which plaintiff refers in
    his motion for additional time in which to move for sanctions, is inapplicable here.  That 21-day

27  time period refers to the so-called "safe harbor" provision during which a party who commits an
    alleged violation may withdraw or otherwise correct the offending allegation or contention.  The

28  rule does not contain a specific time period for filing a motion for sanctions.

16

1   parties are advised that failure to file objections within the specified time may waive the right to

2   appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3   Dated:  February 26, 2014

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

hm
west1293.msj

17